UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHUN LIN JIANG, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 21-11732-FDS |
| v. | ) ) | |
| TOKYO II STEAK HOUSE, INC.; KOBE JAPANESE STEAKHOUSE, INC.; SHOGUN JAPANESE STEAKHOUSE, INC.; TOKYO III STEAK HOUSE, INC.; GUANGLONG LIN; XIONGWEN LI; and ZILAN ZHANG, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

SAYLOR, C.J.

This is a case about employee claims for unpaid wages. Plaintiff Chun Lin Jiang has brought suit, on behalf of himself and other similarly situated employees, against his former employer, Tokyo II Steakhouse, Inc., its owner, Guang Long Lin, and other alleged shareholders and corporate officers for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and the Massachusetts Wage Act, Mass Gen. Laws ch. 149, § 148. In addition, Jiang has sued other restaurants associated with Tokyo II on the theory that together the restaurants constituted a single integrated enterprise. The complaint alleges that the enterprise failed to pay Jiang and other employees the minimum wage or compensate them for the overtime hours they worked.

Defendants have moved to dismiss the complaint for improper service of process and failure to state a claim upon which relief can be granted. For the following reasons the motion

will be granted in part and denied in part.

I.     **Background**

    A.     **Factual Background**

Unless otherwise noted, the facts are drawn from the complaint, documents referred to or attached to that complaint, and other relevant filings concerning defendant's motion to dismiss. [1]

The complaint alleges that defendant Guang Long Lin is the president of several corporations that operate four restaurants in the greater Boston area: Tokyo II Steak House, Inc., in Saugus; Kobe Japanese Steakhouse, Inc., in Braintree; Shogun Japanese Steak House, Inc., in Cambridge; and Tokyo III Steak House, Inc., in Newton. (Compl. ¶¶ 7, 10, 13, 16).[2] Defendants Xiongwen Li and Zilan Zhang are alleged shareholders in the defendant companies, and Zhang is a director of Tokyo III. (*Id.* ¶¶ 26, 28).

Chun Lin Jiang worked at Tokyo II as a Master Teriyaki Chef from approximately May 2014 to June 2021, although he would, on occasion, also work at Kobe. (*Id.* ¶¶ 6, 47-48).[3] According to the complaint, Jiang worked 70.25 hours per week, but was paid a flat rate of $3200 per month. (*Id.* ¶¶ 50-56). He was allegedly never informed of his hourly pay rate or if

---

[1] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Furthermore, "[i]n adjudicating a Rule 12(b)(5) motion to dismiss, a court may 'look beyond the pleadings and may consider affidavits and other documents to determine whether process was properly served.'" *Morrissey v. Massachusetts*, 2022 WL 1463051, at *4 (D. Mass. May 9, 2022) (quoting *Cutler Assocs., Inc. v. Palace Constr., LLC*, 132 F. Supp. 3d 191, 194 (D. Mass. 2015)).

[2] For the sake of clarity, the Court will refer to the individual restaurants according to their corporate identities, as the defendant corporations do business under similar or identical names. For example, the Tokyo II, Tokyo III, and Kobe restaurants all do business, according to the complaint, under the name "Tokyo Japanese Steak House." (*See* Compl. ¶¶ 7, 10, 16). Shogun, meanwhile, does business under the name "Bisuteki Tokyo Japanese Steak House." (*Id.* ¶ 13).

[3] According to the complaint, Jiang was on hiatus from work at Tokyo II between January and June 2018 and March and June 2020. (Compl. ¶ 49).

any tips were deducted from that rate. (*Id.* ¶ 58). Nor did he receive a pay statement in his native language (Chinese) to provide him with that information. (*Id.* ¶ 60). The complaint also alleges that Jiang was not paid overtime for all hours worked in excess of 40 hours per week. (*Id.* ¶ 61).

Although Jiang never worked at Shogun or Tokyo III, the complaint alleges that all defendant companies operated as "joint employers of [Jiang] and constitute[d] an enterprise" as that term is defined in the FLSA. (*Id.* ¶ 30). The companies all allegedly shared the same website, the same corporate officers and shareholders, and some of the same employees. (*See id.* ¶¶ 30-39). The complaint alleges that some employees were transferred between restaurants, and that some would work at multiple restaurants concurrently. (*Id.* ¶¶ 37-38).

### B. Procedural Background

On October 22, 2021, Jiang filed suit on behalf of himself and other similarly situated employees. The complaint alleges five claims against all defendants. Count 1 asserts a claim for failure to pay the minimum wage in violation of the FLSA. Count 2 asserts a claim for the nonpayment of wages in violation of Mass. Gen. Laws ch. 149, § 148. Count 3 asserts a claim for failure to pay the minimum wage in violation of Mass. Gen. Laws ch. 151, §§ 1, 7.[4] Count 4 asserts a claim for failure to pay overtime in violation of the FLSA. Count 5 asserts a claim for failure to pay overtime in violation of Mass. Gen. Laws ch. 151, §§ 1A, 1B.[5]

On the evening of December 4, 2021, a process server attempted to effect service of process on behalf of plaintiff. At 10:30 p.m., he arrived at Tokyo II to serve Tokyo II and the

---

[4] Count 3 simply alleges a violation of "Massachusetts General Law" for failure to pay the minimum wage; the Court has construed that claim as alleging a violation of Mass. Gen. Laws ch. 151, § 7, which sets forth the minimum wage rate for tipped employees.

[5] Mass. Gen. Laws ch. 151, § 1A expressly excludes restaurant employees from its provisions; however, defendants do not move to dismiss the claim on that ground.

individual defendants (Lin, Li, and Zhang).  (*See* ECF Nos. 4, 8-10).  He left copies of the summons and complaint with Ella Yu, a hostess at the restaurant, who (according to the process server) said that she could receive service on behalf of Tokyo II and that she knew Lin, Li, and Zhang.  (*Id.*).

At 11:06 p.m., the process server arrived at Kobe and delivered copies of the summons and complaint to Di Dija, who (the process server attested) was a manager at the restaurant.  (ECF No. 5).  According to the process server, Dija stated that she could accept service on behalf of Kobe.  (*Id.*).  However, according to Lin, Dija was not a manager, but rather a hostess who worked at the restaurant.  (Lin Aff. ¶ 8).

At 11:53 p.m., the process server arrived at Tokyo III and delivered copies of the summons and complaint to Kim Tiuong.  (ECF No. 7).  The process server attested that Tiuong was a manager at the restaurant who stated that she could receive service on behalf of Tokyo III.  (*Id.*).  According to Lin, Tokyo III does not employ or otherwise have any relationship with Tiuong.  (Lin Aff. ¶ 6).[6]

On December 17, 2021, counsel for defendants notified opposing counsel that her clients had not been properly served, but that she was "authorized to accept service on their behalf via the FRCP 4(d) waiver process."  (Def's Ex. 1 at 4).  Plaintiff declined defendant's waiver of service.  (*Id.* at 3).

On January 20, 2022, plaintiff received a letter from the Massachusetts Attorney General authorizing a private right of action against Tokyo II for violations of the Massachusetts Wage Act.  (ECF No. 15).  The letter does not name any other defendant.

---

[6] That night, the process server also delivered a copy of the summons and complaint to Shogun.  (ECF No. 6).  Defendants do not contest that service upon Shogun was proper.

Defendants have moved to dismiss the complaint for insufficient service of process and failure to state a claim upon which relief can be granted.

## II. Service of Process

### A. Legal Standard

Before a federal court may exercise personal jurisdiction over a defendant, service of process must be effected. *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Rule 4 sets forth the acceptable methods for service of process. Fed. R. Civ. P. 4.

When the sufficiency of process is challenged under Rule 12(b)(5), plaintiff bears "the burden of proving proper service." *Rivera-Lopez v. Municipality of Dorado,* 979 F.2d 885, 887 (1st Cir. 1992). A return of service "generally serves as *prima facie* evidence that service was validly performed," but a defendant may adduce "rebuttal evidence to refute any presumption of valid service." *Blair v. City of Worcester,* 522 F.3d 105, 111-12 (1st Cir. 2008). An affidavit produced by a defendant denying agency or otherwise denying valid service, standing alone, may be sufficient to refute the *prima facie* presumption of proper service under Massachusetts and federal law. *Id.* at 112 (collecting cases).

### B. Analysis

#### 1. Service of Corporate Parties

Defendants have moved to dismiss for improper service of process, contending that plaintiff failed to serve corporate defendants Tokyo II, Kobe, and Tokyo III according to the requirements of either federal or Massachusetts law.

Under Rule 4(h), a corporation may be served either (1) in the manner required by the law of the state in which the district court is located, or (2) by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(h)(1)(A), (B).

5

> Under the Massachusetts rules, service can be made on a corporation in two ways:
>
> (1) by delivering a copy of the summons and of the complaint to an officer, to a managing or general agent, or to the person in charge of the business at the principal place of business thereof within the Commonwealth, if any; or (2) by delivering such copies to any other agent authorized by appointment or by law to receive service of process, provided that any further notice required by law be given.

Mass. R. Civ. P. 4(d)(2).

Plaintiff filed proof of service with the Court, thereby providing *prima facie* evidence of proper service. Defendant therefore bears the burden of rebutting the presumption that service was proper.

Defendants contend that service upon the corporate defendants was improper because copies of the summons and complaint were delivered to persons not authorized to receive service on their behalf. Defendants have submitted an affidavit from Lin, who attests that the employees who received service, Yu and Dija, worked as hostesses at Tokyo II and Kobe, respectively. (Lin Aff. ¶¶ 4, 8). According to Lin, their duties consisted of "greeting guests, answering phone calls from the public, including takeout orders, and seating guests when they [entered] the restaurant." (*Id.* ¶¶ 5, 8). They did not hold any "managerial duties or responsibilities," supervise any employees, or have authorization to act as an agent for the purpose of accepting service of process. (*Id.*). In addition, Lin states that Tiuong, the individual who received service on behalf of Tokyo III, was not employed by Tokyo III and did not have any relationship with the restaurant. (*Id.* ¶ 6). Thus, defendants contend that service upon Tokyo II, Kobe, and Tokyo III failed to comply with federal and state law.

Plaintiff contends that service was proper because Yu, Dija, and Tiuong told the process server that they could receive process on behalf of the corporate defendants. In addition, plaintiff argues that, in theory, the process server would have sought out the most senior

6

employee at each restaurant and, therefore, service must have been proper. (Opp'n at 12). However, plaintiff does not offer any evidence beyond the proof of service filed with the Court.

The Court therefore finds that defendants have offered sufficient evidence to rebut the presumption of proper service. Although a "conclusory averment" that a defendant was not served may be insufficient to overcome the *prima facie* presumption of proper service, *Advo, Inc. v. Beninati*, 2005 Mass. App. Div. 95, 96 (2005), an affidavit is generally sufficient evidence under Massachusetts and federal law, *Blair*, 522 F.3d at 112. Lin's affidavit explains why the individuals who received process were not authorized to do so. Thus, the affidavit suffices to rebut the presumption of proper service.

Taking that evidence into account, the Court further finds that Yu, Dija, and Tiuong were not agents authorized to receive process on defendants' behalf. As a threshold issue, the process server's attestation that Yu, Dija, and Tiuong each stated that she was authorized to receive service is not dispositive. Plaintiff's contention is, in essence, that Yu, Dija, and Tiuong had apparent authority to accept service for Tokyo II, Kobe, and Tokyo III, respectively. However, apparent authority can only be created by the words or actions of a principal, not its purported agent. *Egan v. Tenet Health Care*, 193 F. Supp. 3d 73, 81 (D. Mass. 2016) ("Apparent authority 'is not established by the putative agent's words or conduct, but by those of the principal.'" (quoting *CSX Transp., Inc. v. Recovery Express, Inc.*, 415 F. Supp. 2d 6, 10 (D. Mass. 2006))). Plaintiff has proffered no evidence to show that the conduct of the corporate defendants established an agency relationship with Yu, Dija, and Tiuong such that they would be authorized to receive process on defendants' behalf.

Nor has plaintiff shown that Yu, Dija, and Tiuong were individuals identified in the Massachusetts or federal rules as capable of receiving process on behalf of a corporation. Under

both federal and Massachusetts law, service may be made on "a managing or general agent" of a corporation.  Fed. R. Civ. P. 4(h)(1)(A), (B); Mass. R. Civ. P. 4(d)(2).[7]

> The determination whether an individual is a "managing or general agent" depends on a factual analysis of that person's authority within the organization. One occupying this position typically will perform duties which are "sufficiently necessary" to the corporation's operations.  [She] should be "a responsible party in charge of any substantial phase" of the corporation's activity.  In brief, it is reasonable to expect that such an agent will have broad executive responsibilities and that [her] relationship will reflect a degree of continuity.

*Egan*, 193 F. Supp. 3d at 83-84 (D. Mass. 2016) (quoting *Furukawa Elec. Co. of N. Am. v. Yangtze Optical Fibre & Cable Co.*, 2005 WL 3071244, at *2 (D. Mass. Nov. 16, 2005)).

Here, there is no evidence that Yu, Dija, or Tiuong acted as managing or general agents. To the contrary, Lin's affidavit states that Yu and Dija were in no way involved in the supervision or management of Tokyo II and Kobe.  And the affidavit states that Tiuong was neither an employee of, nor in any way associated with, Tokyo III.  Plaintiff therefore failed to properly serve Tokyo II, Kobe, and Tokyo III according to the Massachusetts or federal rules.

Accordingly, the motion to dismiss will be granted pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process as to defendants Tokyo II, Kobe, and Tokyo III.

### 2. Service of Individuals

Defendants have also moved to dismiss the complaint against the individual defendants Lin, Li, and Zhang for insufficient service of process.

Fed. R. Civ. P. 4(e) sets forth the four acceptable methods to serve an individual defendant:  (1) by following the requirements of state law for serving a summons in actions brought in the courts of general jurisdiction in the state where the district court is located or

---

[7] Massachusetts Rule 4(d)(2) differs from Fed. R. Civ. P. 4(h) in that a corporation may be served by serving a "person in charge of the business . . . ."

where service is made (here, Massachusetts); (2) by delivering a copy of the summons and the complaint to the individual personally; (3) by leaving copies of those items at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (4) delivering copies to an agent authorized by appointment or by law to receive service of process.[8]

It does not appear that plaintiff complied with any of those methods.  Plaintiff did not serve the individual defendants personally or at their usual places of abode.  Rather, the process server left the summonses at Tokyo II with Yu.  Service was only proper, then, if Yu was an agent authorized by appointment or law to receive service of process on behalf of the individual defendants.  That does not appear to be the case here.  Lin, Li, and Zhang each provide an affidavit stating that Yu was not authorized to receive personal service on his behalf.  (Lin Aff. ¶ 12; Li Aff. ¶¶ 8-9; Zhang Aff. ¶¶ 7-8).  Although the process server attested that Yu stated that she could receive process on behalf of defendants, plaintiff does not identify any conduct on the part of defendants that would lead a reasonable person to believe that they had granted Yu apparent or actual authority to receive service for them.[9]  Indeed, she was only a hostess, and it is likely that her principal duties involved seating patrons when they arrived at the restaurant.

Accordingly, the motion to dismiss will be granted pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process as to defendants Lin, Li, and Zhang.

---

[8] Massachusetts Rule 4(d)(1) provides for service in essentially the same manner as the federal rule, except that it allows for the summons and complaint to be left at a defendant's last or usual place of abode without requiring that those items be left with a resident of suitable age and discretion.

[9] Defendant also contends that service was mailed to Lin at his home address, but that the Massachusetts rules do not permit the mailing of service to a defendant residing within the Commonwealth.  (Def.'s Mem. at 10). In any event, plaintiff did not file proof of such service, nor did he contend that service was proper because of that mailing.

### III.     Failure to State a Claim

#### A.     Legal Standard

To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

#### B.     Analysis

Defendants have moved to dismiss the complaint on the grounds that plaintiff failed to exhaust the administrative remedies available to him under state law and that the complaint fails to sufficiently allege an employer-employee relationship necessary to state a claim under the FLSA.  The Court will address each of these issues in turn as they apply to the sole remaining defendant, Shogun.

##### 1.     Exhaustion of Administrative Remedies

Pursuant to Mass. Gen. Laws ch. 149, § 150, an individual alleging a violation of the

Massachusetts Wage Act, or other wage-law violations under Mass. Gen. Laws ch. 151, may bring a private right of action "ninety days after filing a complaint with the Attorney General, or sooner if the Attorney General assents to such suit." *Depianti v. Jan-Pro Franchising Int'l, Inc.*, 465 Mass. 607, 611 (2013). "Failure to satisfy this statutory precondition is grounds for dismissal." *Joyce v. Upper Crust, LLC*, 2012 WL 3028459, at *6 (D. Mass. July 25, 2012).[10]

Here, plaintiff received a letter from the Attorney General authorizing a private right of action. (ECF No. 15). However, that letter was received on January 20, 2022, well after plaintiff had already filed this action. (*Id.*). And, in any event, the letter authorizes suit against Tokyo II only. (*Id.*). Thus, Plaintiff has failed to exhaust his administrative remedies with respect to his state-law claims against Shogun. Accordingly, those claims will be dismissed.

## 2. Employer-Employee Relationship

The FLSA provides broad and comprehensive coverage of employees. *United States v. Rosenwasser*, 323 U.S. 360, 362 (1945). Indeed, the Supreme Court has indicated that "[a] broader or more comprehensive coverage of employees . . . would be difficult to frame." *Id*. However, the statute's reach is not without limits. The FLSA applies only to those persons who are "employed" by an "employer." 29 U.S.C. § 207(a)(1). To "employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g). An "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). Liability under the FLSA is thus predicated upon the existence of an employer-employee relationship. However, there may be multiple "employers" of one employee, all of whom are simultaneously liable for compliance. *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007). As a general

---

[10] Defendant contends that dismissal for failure to exhaust administrative remedies is appropriate under either Fed. R. Civ. P. 12(b)(1) or 12(b)(6). Although the standards are similar, the Supreme Judicial Court has held that the administrative exhaustion requirement under the Wage Act is not jurisdictional in nature. *Depianti*, 465 Mass. at 611. Therefore, the standard set forth under Fed. R. Civ. P. 12(b)(6) is appropriate here.

matter, in determining whether an employment relationship exists for the purposes of the FLSA, courts look "not to the common law conceptions of that relationship, but rather to the economic reality of the totality of the circumstances bearing on whether the putative employee is economically dependent on the alleged employer." *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998) (internal quotations omitted).

The parties do not contest that plaintiff was an employee of Tokyo II and Kobe. The complaint alleges that he worked as a Master Teriyaki Chef at those restaurants for upward of 70 hours per week for a flat rate of $3200 per month. Defendants do not contend that those alleged facts are insufficient to establish a direct employee-employer relationship between plaintiff and the restaurants at which he worked. Rather, the issue is whether all the corporate defendants were so intertwined such that the violations of one corporation can be attributed to all others.

The complaint alleges that the four defendants "are joint employers of Plaintiff and constitute an enterprise as that term is defined by 29 U.S.C. § 203(r)." (Compl. ¶ 30). In his opposition to the motion to dismiss, plaintiff further contends that all defendants should be treated as "a single enterprise," and he cites to the "integrated enterprise test" set forth by the First Circuit in *Penntech Papers, Inc. v. NLRB*, 706 F.2d 18 (1st Cir. 1983). (Opp'n at 15-16).

There are three different legal frameworks potentially at issue here: (1) "joint employer" liability, which generally applies when an employee has multiple simultaneous employers; (2) the definition of "enterprise" in the FLSA, which applies to determine whether there is FLSA jurisdiction, 29 U.S.C. § 203(r); and (3) the "integrated enterprise test," which is used to determine liability under the National Labor Relations Act, *see Penntech Papers, Inc.*, 706 F.2d at 18. Each of those has a somewhat different purpose and is determined according to a somewhat different test.

First, joint employer liability is a concept that may apply where there are in effect "several simultaneous employers, each responsible for compliance with [FLSA]." *Baystate*, 163 F.3d at 675.[11]  A common example is where employees of a temporary employment agency are assigned to work for other companies.  Here, plaintiff's contention that Shogun acted as a "joint employer" can be disposed of quickly, because the complaint does not allege, as a factual matter, that plaintiff was ever employed by Shogun.  Liability as a joint employer requires the existence of an employment relationship between the employee and the accused joint employer.  *See Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 390 (D. Mass. 2016).  The complaint alleges that plaintiff worked for both Tokyo II and Kobe, but not Shogun (or Tokyo III).

Second, the statutory definition of "enterprise" under 29 U.S.C. § 203(r) is used to determine whether multiple companies constitute a single enterprise for the purpose of determining jurisdictional coverage under the FLSA.  *See Cavallaro v. UMass Mem'l Health Care, Inc.*, 971 F. Supp. 2d 139, 148 (D. Mass. 2013).[12]  However, the fact that several companies may be considered together in order to determine the jurisdiction of FLSA does not mean that those companies may all be found liable for the same violation; the jurisdictional issue of coverage is distinct from the issue of liability.  *See. e.g.*, *Chao v. A-One Medical Servs.*, 346 F.3d 908, 917 (9th Cir. 2003) ("Whether two companies constitute a single enterprise for FLSA

---

[11] The First Circuit has set forth four factors that are relevant to joint employer analysis:  whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.  *Id.* (citing *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).

[12] The FLSA defines an "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose . . . ."  29 U.S.C. § 203(r)(1).  There are "three main elements" that courts consider when determining whether entities constitute an enterprise under the FLSA:  "related activities, unified operation or control, and common business purpose."  *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973).

coverage and whether they are liable . . . are technically separate issues."); *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986) ("[T]he enterprise analysis is different from the analysis of who is liable under the FLSA. The finding of an enterprise is relevant only to the issue of coverage."). Here, the parties do not dispute the existence of jurisdiction, but rather liability for alleged violations. Thus, plaintiff's contention that defendants "constitute[d] an enterprise as that term is defined by 29 U.S.C. § 203(r)" is not disputed, but does not resolve the issue of potential liability.

Third, the "integrated enterprise" test is used to determine "whether interrelated companies should be treated as one entity under the [NLRA], 29 U.S.C. § 164." *Romano v. U-Haul Int'l*, 223 F.3d 655, 662 (1st Cir. 2000); *Penntech Papers, Inc.*, 706 F.2d at 25 (1st Cir. 1983). The test examines four factors: (1) whether the companies' operations are interrelated; (2) whether there is common management; (3) whether there is centralized control of labor operations; and (4) whether there is common ownership. *Id*. The First Circuit has adopted the integrated enterprise test for determining employer liability in the context of the Americans with Disabilities Act, *Burnett v. Ocean Properties, Ltd.*, 987 F.3d 57, 65 (1st Cir. 2021), Title VII of the Civil Rights Act, *Torres-Negrón v. Merck & Co., Inc.*, 488 F.3d 34, 40-42 (1st Cir. 2007), and the Family and Medical Leave Act, *Engelhardt v. S.P. Richards Co., Inc.*, 472 F.3d 1, 4-5 (1st Cir. 2006). It has not, however, applied the test within the context of the FLSA. *Hamilton*, 209 F. Supp. 3d at 392.[13]

---

[13] In *Cavallaro v. UMass Memorial Healthcare, Inc.*, the First Circuit refrained from addressing plaintiffs' contention that defendants in that case operated as a "joint employer" or "integrated enterprise"—theories that the First Circuit said "might (or might not) extend liability beyond [a] direct employer"—because the complaint failed to allege a direct employment relationship with any of the named defendants, and thereby failed to allege employer liability under the FLSA. 678 F.3d 1, 9-10 (1st Cir. 2012).

On remand, the complaint in *Cavallaro* was amended to allege a direct employment relationship as to one defendant and "joint employer" or "integrated enterprise" liability as to the others. 971 F. Supp. 2d at 147-48.

It is perhaps an understatement to say that the law concerning application of the integrated enterprise test in FLSA cases is unsettled. There does not appear to be any appellate case from any circuit that has applied the integrated enterprise test to determine FLSA liability.[14] Furthermore, district courts are split on the issue. *Compare Huang v. Sakura Mandarin, Inc.*, 2022 WL 2052646, at *3-4 (E.D. Pa. June 7, 2022) (applying test); *Xiao v. Sichuan Gourmet LLC*, 2022 WL 819096, at *9 (W.D. Pa. Mar. 18, 2022); *Hong v. JP White Plains, Inc.*, 2021 WL 1226566, at *5-6 (S.D.N.Y. Mar. 31, 2021); *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d. 580, 586-87 (S.D.N.Y. 2020); *Anderson v. Theriault Tree Harvesting, Inc.*, 2010 WL 323530, at *9 (D. Me. Jan. 20, 2010); *with Arif v. Bashir*, 2021 WL 1147582, at *4 (S.D. Tex. Mar. 10, 2021) (rejecting test); *Heuberger v. Smith*, 2017 WL 3923271, at *14 (N.D. Ind. Sept. 7, 2017); *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 415-416 (D. Md. 2013).

It is not immediately obvious why the integrated enterprise test should be applied in other employment contexts, such as the ADA, Title VII, and FMLA, but not the FLSA. (Nor, for that matter, is it obvious why there should be multiple standards for determining who should be considered an employer for FLSA purposes.) Nonetheless, the application of the test to FLSA cases is far from straightforward.

The potential application of the test here is further complicated by the current procedural

---

However, in opposing dismissal, the plaintiffs relied entirely on the joint employer test and the statutory definition set forth in §203(r), and accordingly the claims against the non-employer defendants were dismissed.

[14] In addition to *Cavallaro*, cases from other circuits have involved parties invoking the integrated enterprise test, but none resolve the issue here. In *Saleem v. Corporate Transportation Group, Ltd.*, the parties did not dispute, and the Second Circuit accepted as fact, that the named defendants were "a single integrated enterprise and/or joint employer for the purposes of the FLSA." 854 F.3d 131, 134 (2d Cir. 2017). But the issue presented to that court was whether plaintiff black-car drivers were properly classified as employees or independent contractors under the FLSA, not the applicability of the integrated enterprise test. *Id*. In *Ash v. Anderson Merchandisers, LLC*, the appellants cursorily alleged a direct employment relationship by parroting the elements of the integrated-enterprise test. 799 F. 3d 957, 961 (8th Cir. 2015). The Eighth Circuit affirmed dismissal of the case because the complaint failed to plausibly allege a direct employment relationship according to the economic-reality test. *Id.*; *see Baystate*, 163 F.3d at 675.

posture of this case. Of the four defendants, only Shogun has been properly served. A finding that the corporate defendants all operated as a single entity would mean that the restaurants for which plaintiff actually did work are dismissed from the case, but a restaurant for which he did not remains. Such a result is not precluded by the integrated enterprise test, which contemplates that multiple entities will be treated as a single employer, but it would nevertheless be a somewhat odd result.

Perhaps more importantly, the complaint did not, directly or indirectly, allege that the four corporate defendants should be treated as a single entity under the integrated enterprise test. Instead, it alleged only that defendants are "joint employers of Plaintiff and constitute an enterprise as the term is defined by 29 U.S.C. § 203(r)." (Compl. ¶ 30). It did allege facts concerning common ownership, management, and control that, read broadly, would probably be sufficient to satisfy the requirements of the test. In any event, it was not until his opposition to the motion to dismiss that plaintiff alleged that defendant companies constituted a single employer under the integrated enterprise test. Even then, he addressed the issue in only a cursory fashion, among other things failing to provide any argument as to why the integrated enterprise test should be applied to a claim brought under the FLSA.

Under Fed. R. Civ. P. 8, the complaint ought to "at least implicate the relevant legal issues." *McLane, Graf, Raulerson, Middleton, P.A. v. Rechberger*, 280 F.3d 26, 38 (1st Cir. 2002) (quoting *Schott Motorcycle Supply Inc. v. American Honda Motor Co.*, 976 F.2d 58, 62 (1st Cir. 1992)). However, it "need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Accordingly, and while it is certainly a close call, the Court will not grant the motion to dismiss on the ground that the complaint fails to allege the existence of an integrated enterprise.

Nor will the Court grant the motion, at least on this record, as to the viability of that claim. It appears that those opinions that have applied the integrated enterprise test to a FLSA claim are the better reasoned, and accordingly the Court will follow those opinions here. While it is true that the issue would be better resolved with proper briefing, and perhaps an evidentiary record, for the present it is sufficient to deny the motion as to Shogun. Whether the evidence will support plaintiff's claims is a question for another day.

### IV.     Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED pursuant to Fed. R. Civ. P. 12(b)(5) as to defendants Tokyo II Steak House, Inc., Kobe Japanese Steakhouse, Inc., Tokyo III Steak House, Inc., Guanglong Lin, Xiongwen Li, and Zilan Zhang; also GRANTED pursuant to Fed. R. Civ. P. 12(b)(6) as to Counts 2, 3, and 5 against Shogun Japanese Steakhouse, Inc.; and otherwise DENIED.

**So Ordered.**

Dated: July 22, 2022

/s/ F. Dennis Saylor, IV
F. Dennis Saylor, IV
Chief Judge, United States District Court